IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| CREWFACILITIES.COM, LLC, | |
| Plaintiff, | |
| v. | Civil No. 1:20-cv-01637-RGA |
| HOTELENGINE, INC., | |
| Defendant. | |

## HOTELENGINE, INC.'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS CREWFACILITIES.COM, LLC'S COMPLAINT

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**
Kenneth J. Nachbar (#2067)
Daniel T. Menken (#6309)
1201 North Market Street
Wilmington, DE 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
Email: knachbar@mnat.com
Email: dmenken@mnat.com

OF COUNSEL:

Michael P. Lennon, Jr.
Andrew C. Elkhoury
Anna V. Durham
MAYER BROWN LLP
700 Louisiana Street, Suite 3400,
Houston, Texas 77002-2730

*Counsel for Defendant*

January 25, 2021

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. ii

Introduction ........................................................................................................................... 1

Nature and Stage of the Proceedings ................................................................................... 2

Statement of Facts ................................................................................................................. 2

Summary of Argument ......................................................................................................... 5

Argument ............................................................................................................................... 6

I.      Legal Standard ........................................................................................................... 6

II.     All Claims Must be Dismissed because Crew has Failed to Sufficiently Allege its
        Damages .................................................................................................................... 8

        A.      Crew's Claims for Damages are Insufficient ............................................... 8

        B.      The Subcontract Limits a Damage Recovery by Crew ............................... 10

III.    Even if Not Waived, Crew's Tort Causes of Action Fail as a Matter of Law ........ 11

        A.      Crew's Tort Claims Fail as a Matter of Law because they are not
                Independent from Crew's Breach of Contract Claim. ................................. 11

        B.      As a Subcontractor on the Project, HotelEngine Cannot Tortiously
                Interfere with the Government Contract as a Matter of Law. ..................... 14

        C.      Crew's Unfair Competition Claim Fails to Allege a Reasonable
                Expectancy of Entering a Valid Business Relationship. ............................. 16

        D.      Crew's Tortious Interference with Economic Advantage Claim Fails to
                Allege an Expectation of Future Business. ................................................. 17

Conclusion .......................................................................................................................... 18

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Agilent Techs., Inc. v. Kirkland*,
   No. CIV.A. 3512-VCS, 2009 WL 119865 (Del. Ch. Jan. 20, 2009) .......................................16

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................................6, 7, 10

*Beard Research, Inc. v. Kates*,
   8 A.3d 573 (Del. Ch. 2010)...............................................................................8, 14

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)......................................................................................6, 7, 8, 10

*Bogie v. Rosenberg*,
   705 F.3d 603 (7th Cir. 2013) ...........................................................................7

*In re Burlington Coat Factory Sec. Litig.*,
   114 F.3d 1410 (3d Cir. 1997)................................................................................2, 7

*Canon Fin. Services, Inc. v. Bray*,
   Civ. 14-3829, 2015 WL 851816 (D.N.J. Feb. 26, 2015) ..............................................8

*Commonwealth Const. Co. v. Cornerstone Fellowship Baptist Church, Inc.*,
   C.A. 04L-10-101 RRC, 2006 WL 2567916 (Del. Super. Ct. Aug. 31, 2006) .......................11

*Connelly v. Lane Const. Corp.*,
   809 F.3d 780 (3d Cir. 2016).........................................................................6

*Coregis Ins. Co. v. Am. Health Found. Inc.*,
   241 F.3d 123 (2d Cir. 2001)...........................................................................10

*Cornell Glasgow, LLC v. La Grange Properties, LLC*,
   CIV.A. N11C-05013JRS, 2012 WL 2106945 (Del. Super. Ct. June 6, 2012) ......12, 13, 14, 15

*Data Mgt. Internationale, Inc. v. Saraga*,
   CIV.A. 05C-050108, 2007 WL 2142848 (Del. Super Ct. July 25, 2005) ..............................12

*Doug Grant, Inc. v. Greate Bay Casino Corp.*,
   232 F.3d 173 (3d Cir. 2000)......................................................................7

*Fowler v. UPMC Shadyside*,
   578 F.3d 203 (3d Cir. 2009).......................................................................7

*Garber v. Whittaker,*
    174 A. 34 (Del. Super. 1934) ......................................................................12

*Iotex Comm., Inc. v. Defries,*
    No. 15817, 1998 WL 914265 (Del.Ch. Dec.21, 1998) ...........................................12

*Kuroda v. SPJS Holdings LLC,*
    971 A.2d 872 (Del.Ch.2009) ...............................................................12, 13

*Nespresso USA, Inc v. Ethical Coffee Co. SA,*
    No. CV 16-194-GMS, 2016 WL 11697058 (D. Del. Sept. 7, 2016) ...............................16, 17

*Organovo Holdings, Inc. v. Dimitrov,*
    162 A.3d 102 (Del. Ch. 2017) .......................................................8, 17, 18

*Pinkert v. John J. Olivieri, P.A.,*
    CIV. A. 99-380-SLR, 2001 WL 641737 (D. Del. May 24, 2001) .............................12

*Sierra Invs., LLC v. SHC, Inc.,*
    329 B.R. 438 (Bankr. D. Del. 2005) .......................................................7

*Smyrna Hosp., LLC v. Petrucon Const., Inc.,*
    CV N10C-01-061 CLS, 2013 WL 6039287 (Del. Super. Ct. Sept. 27, 2013) ....................11

*Tandy Corp. v. Fusco Properties, L.P.,*
    CIV.A.95C-03-085JOH, 1996 WL 280774 (Del. Super. Ct. Apr. 10, 1996) ....................11

*Tenneco Auto, Inc. v. El Paso Corp.,*
    No. CIV.A. 18810-NC, 2007 WL 92621 (Del. Ch. Jan. 8, 2007) ...........................15

*Total Care Physicians, P.A. v. O'Hara,*
    798 A.2d 1043 (Del. Super. 2001) .....................................................8, 16

*Tredo v. Ocwen Loan Servicing, LLC,*
    Civ. A. 14-3013, 2014 WL 5092741 (D.N.J. Oct. 10, 2014) ..................................9

*VLIW Tech., LLC v. Hewlett-Packard Co.,*
    840 A.2d 606 (Del. 2003) ................................................................8

*Vorchheimer v. Philadelphian Owners Ass'n,*
    903 F.3d 100 (3d Cir. 2018) .............................................................7

*Williams Elec. Co. v. Honeywell, Inc.,*
    772 F. Supp. 1225 (N.D. Fla. 1991) .....................................................14

*You Map, Inc., v. Snap Inc.,*
    No. CV 20-00162-CFC, 2021 WL 106498 (D. Del. Jan. 12, 2021) ...........................16

**Statutes, Rules and Regulations**

Fed. R. Civ. P. 12(b)(6)...........................................................................................................*passim*

**Introduction**

Plaintiff CrewFacilities.com, LLC ("Crew") seeks contractual and tort relief based on an alleged conspiracy between Defendant HotelEngine, Inc. ("HotelEngine") and the City of New York's Emergency Management Department ("NYCEM").  Crew tethers together speculative allegations, "on information and belief," suggesting that HotelEngine and the government conspired to replace Crew with HotelEngine on a government contract (the "Government Contract') that HotelEngine was already performing as Crew's subcontractor.  While these "information and belief" allegations have no basis in fact, they also make no sense: the indisputable record shows that HotelEngine received the exact same compensation from the government as it would have received as Crew's subcontractor.  Unperturbed by the lack of motive or gain for HotelEngine to engage in this government conspiracy, Crew also seeks nebulous and undefined "significant damages" from HotelEngine.

These "significant damages" have no plausible basis: under the Government Contract, Crew was compensated a fixed amount of money for each night HotelEngine booked a guest at a hotel.  The last day that a guest could book a hotel room within the Program was July 6, 2020, and Crew was not terminated until over three weeks after that date.  By the time Crew was terminated, any reservation and corresponding night stayed for which it could have been owed compensation had already occurred.  Crew has not alleged that it was not paid for any such reservations and nights stayed—which raises the obvious question, ***how was Crew actually damaged?***

Crew's Complaint sheds no light on this question.  Crew has not alleged any facts suggesting that it has actually been damaged, contractually or otherwise.  This alone is fatal to Crew's claims.  Crew's claims also fail for several other reasons.  First, under the Subcontract, Crew has waived those damages it is likely to allege in an amended complaint.  Second, Crew impermissibly masquerades its alleged breach of contract claim as three purportedly different torts

without a basis to seek tort recovery.  Third, as a matter of Delaware law, HotelEngine could not have interfered with the Government Contract because it was not a stranger to the contract.  Fourth, Crew has not alleged any reasonable expectancy of entering a valid business relationship with which HotelEngine could have unfairly competed.  And fifth, Crew has not alleged an expectation of future business with which HotelEngine could have tortiously interfered.  For these reasons, HotelEngine moves for dismissal of all claims in Crew's Complaint under Federal Rule of Civil Procedure 12(b)(6).

## Nature and Stage of the Proceedings

On December 1, 2020, CrewFacilities.com, LLC ("Crew") filed its Complaint against HotelEngine alleging causes of action for breach of contract, tortious interference with contract, unfair competition, tortious interference with economic advantage, and contractual indemnification. HotelEngine now moves to dismiss all claims.

## Statement of Facts

The contractual relationship between Crew and HotelEngine began in the spring of 2020, pursuant to a COVID-19 pandemic-related New York City program that sought to provide temporary housing to individuals in need (the "Program").  Compl. ¶ 7.  On March 21, 2020, Crew began to assist NYCEM with this Program. Compl. ¶ 7. On April 1, 2020, Crew and HotelEngine executed a Confidential Services Agreement (i.e., the Subcontract), pursuant to which "[t]he Parties agree[d] to jointly service the Government Contract . . . ."  Compl. ¶ 11; Ex. 1, Subcontract p. 1.[1]  The Subcontract contained, among other provisions, a damages waiver holding that neither party shall be liable for "any indirect, incidental, punitive, special, or consequential damages . . .

---

[1] As discussed *infra*, "[a] document integral to or explicitly relied upon in a complaint may be considered" by the Court in ruling on a motion to dismiss. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis, citations, and quotations omitted).

including without limitations . . . lost revenue, loss of income, or loss of business advantage . . . ." *Id.* at p. 5 (emphasis removed).

The day after the Subcontract was entered, April 2, 2020, Crew executed a Services Agreement with NYCEM (i.e., the Government Contract). Compl. ¶ 9. Under the Government Contract, Crew was responsible for sourcing, booking, managing, tracking, reporting, and auditing hotel rooms and other lodging services used in the Program. Compl. ¶ 8. The Government Contract, which retroactively took effect beginning March 21, 2020, explicitly "contemplated that HotelEngine may serve as a subcontractor to Crew to assist with certain responsibilities of the Government Contract." Compl. ¶ 10.

The Government Contract was originally set to expire on May 1, 2020. Compl. ¶ 13. However, Crew and NYCEM jointly agreed to extend the Government Contract through July 31, 2020. *Id.* Pursuant to this agreement, on May 5, 2020, Crew and NYCEM executed a Modification and Extension Agreement extending the term of the contract. Ex. 3, Direct Contract p. 1. On May 2, 2020, Crew and HotelEngine agreed to their own extension of the Subcontract, contained within the First Amendment thereto ("First Amendment"). Compl. ¶ 14.

Crew and HotelEngine were compensated for their respective work for the Program pursuant to the terms of the Government Contract, the Modification, the Subcontract, and the First Amendment. Under the Government Contract, NYCEM agreed to pay Crew on a per-reservation basis at a rate of $27 per room, per night. Ex. 3, Direct Contract p. 118. Under the Subcontract, Crew and HotelEngine agreed that this $27 fee would be divided such that Crew received $7.50 per room, per night, while HotelEngine received $19.50 per room, per night. Ex. 1, Subcontract p. 3. When the term of the Government Contract was extended, the compensation thereunder increased to $35 per room, per night (split $8 to Crew and $27 to HotelEngine). Ex. 3, Direct

3

Contract pp. 121, 237; Ex. 2, First Amendment p. 1.  At all times, Crew was responsible for remitting payment to HotelEngine within three calendar days of its receipt of each payment from NYCEM.  Ex. 1, Subcontract page 3.

On or about July 1, 2020, Crew received a payment from NYCEM for the period of June 8-14 (the "July Payment").  Compl. ¶ 19.  However, in violation of the Subcontract, Crew did not remit to HotelEngine the Vendor portion of or HotelEngine's fee based on the July Payment within three calendar days.  *Id.* ¶ 21.  HotelEngine demanded payment, and Crew paid HotelEngine's fee. *Id*. ¶ 26.  However, Crew refused to remit to HotelEngine the Vendor portion of the July Payment in disregard of the terms of the Subcontract.  *See id*. ¶ 30.

As a result of Crew's failure to remit the Vendor portion of the July Payment to HotelEngine, on July 20, 2020, NYCEM issued to Crew a Notice to Cure and Opportunity to Be Heard ("Notice to Cure").  *Id*. ¶ 36.  The Notice to Cure noted that Crew's withholding of the Vendor funds would "jeopardize" the Program.  *Id*. ¶ 37.  The Notice additionally cited Crew's "failure to administer the [P]rogram, failure to cooperate with NYCEM, failure to have regular meetings with NYCEM, [and] failure after purportedly ceasing its contractual relationship with HotelEngine to have a mechanism in place to carry out the work that HotelEngine had performed." Ex. 3, Direct Contract pp. 260-61.  Crew failed to remit the Vendor portion of the July Payment to HotelEngine during the ten-day cure period.  Compl. ¶ 41.

On July 31, 2020, "NYCEM held an opportunity to be heard meeting for Crew . . . during which Crew was provided the opportunity to be heard and to show cause as to why it should not be declared in default of its obligations under the Agreement.  The sole representative who attended the show cause meeting on behalf of Crew was Crew's counsel."  Ex. 3, Direct Contract p. 261.

Roughly twenty minutes into the meeting, during the course of NYCEM's presentation, "Crew's counsel abruptly left the meeting without notice." *Id.* According to NYCEM's termination letter:

> The City attempted to reach Crew's counsel numerous times thereafter, by both email and phone, to see whether he intended to rejoin the meeting without response. The City received no response. Instead, Crew submitted a letter to NYCEM on or about 11:31 a.m. EST indicating that Crew will not further participate in the opportunity to be heard meeting.

*Id.* That same day, finding that "Crew's failures under the [Government C]ontract warrant the finding of default," NYCEM issued to Crew a Notice of Termination. Compl. ¶ 40; Ex. 3, Direct Contract p. 266. Notably, NYCEM issued this Notice of Termination even though only 105 minutes remained until the natural expiration of the Government Contract. Compl. ¶ 40.

Following the termination of the Government Contract, on August 6, 2020, NYCEM contracted directly with HotelEngine so that HotelEngine could "assume all of Crew's outstanding obligations under the [Government Contract]. . . " ("Direct Contract"). *Id.* ¶ 42; Ex. 3, Direct Contract p. 2. These outstanding obligations included "reconciliation of all invoices and folios, and recoupment for NYCEM of any overpayments discovered as a result of the reconciliation process." Ex. 3, Direct Contract p. 2. Under the Direct Contract, NYCEM agreed to reimburse HotelEngine a fee of $27 per room, per night for any rooms for which HotelEngine had not yet received compensation—the same amount that HotelEngine would have received had Crew remained on the Program. *Id.*; First Amendment p. 1. Since no new reservations for the Program were made after July 6 and all corresponding nights stayed were completed before August 6, HotelEngine received no compensation from the Direct Contract that it was not already entitled to. Compl. ¶ 24; Ex. 3, Direct Contract p. 2.

<div align="center">

### Summary of Argument

</div>

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, HotelEngine is entitled to dismissal of all of Crew's claims because Crew fails to state any plausible claims for relief:

<div align="center">5</div>

1. Crew failed to plead any facts, let alone plausible ones, that show that it has been damaged by HotelEngine.  Since damages are an element of each of Crew's claims, the absence of damages allegations is fatal to the Complaint;

2. Under the Subcontract, Crew waived damages it might allege on amendment of the Complaint;

3.  As a matter of law, Crew cannot seek recovery in tort because it seeks recovery in contract for the same alleged injuries;

4. As a matter of Delaware law, since HotelEngine was a subcontractor on the Project, HotelEngine could not have interfered with the Government Contract;

5. Crew's unfair competition claim fails to state a plausible claim for relief because Crew did not allege a reasonable expectancy of entering a valid business relationship; and

6. Crew's tortious interference with economic advantage claim fails to state a plausible claim for relief because Crew did not allege an expectation of future business.

## Argument

### I.    Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must . . . 'tak[e] note of the elements [the] plaintiff must plead to state a claim.'" *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675). "[A] pleading offering only 'labels and conclusions' or 'a formulaic recitation of the elements of

a cause of action will not do.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Twombly*, 550 U.S. at 570).

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. The Court "need not accept as true unsupported conclusions and unwarranted inferences." *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000) (citations and internal quotation marks omitted). Indeed, it is not enough to plead facts showing that a claim is "conceivable" or to present a "sheer possibility that a defendant has acted unlawfully." *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678. Facts that are "merely consistent with a defendant's liability" are insufficient because they "stop[] short of the line between 'possibility and plausibility of entitle[ment] to relief.'" *Twombly*, 550 U.S. at 557.

Additionally, "a document integral to or explicitly relied upon in the complaint may be considered" by the Court in ruling on a motion to dismiss. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis, citations, and quotations omitted). If the plaintiff's "exhibits contradict [its] own allegations in the complaint, the exhibits control." *Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 112 (3d Cir. 2018).[2]

---

[2] *See also Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) ("When an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss."); *Sierra Invs., LLC v. SHC, Inc.*, 329 B.R. 438, 442 (Bankr. D. Del. 2005) ("if the allegations of [the] complaint are contradicted by documents made a part thereof, the document controls and the Court need not accept as true the allegations of the complaint.").

**II.    All Claims Must be Dismissed because Crew has Failed to Sufficiently Allege its Damages**

    **A.    Crew's Claims for Damages are Insufficient.**

Damages are a required element of each of Crew's causes of action.[3]  Crew's Complaint is devoid of any factual allegations—let alone plausible ones—supporting the claim that Crew has been damaged.  Instead, Crew relies on threadbare legal conclusions, merely stating that "Crew has been damaged as a direct and proximate result of the foregoing acts," Compl. ¶45, "Crew has suffered and will continue to suffer significant damages in excess of $75,000," *id.* at ¶51, and other boilerplate statements, *id.* at ¶¶ 57; 67; 72; 75-76.  At best, these are insufficient "formulaic recit[als]" of the damages elements of Crew's causes of action.  *Twombly*, 550 U.S. at 555.

Allegations that the plaintiff "suffered damages in excess of $75,000" are "conclusory" when "unsupported by any alleged facts." *Canon Fin. Services, Inc. v. Bray*, Civ. 14-3829, 2015 WL 851816, at *5 (D.N.J. Feb. 26, 2015).  Because Crew "fails to allege any harm that resulted from [HotelEngine's] behavior to substantiate the conclusion that it suffered $75,000, or more, in damages," Crew has failed to state any plausible claims for relief. *See id.* (citing *Twombly*, 550

---

[3] *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003) ("In order to survive a motion to dismiss for failure to state a breach of contract claim, the plaintiff must demonstrate: first, the existence of the contract, whether express or implied; second, the breach of an obligation imposed by that contract; and third, **the resultant damage to the plaintiff**.") (emphasis added); *Beard Research, Inc. v. Kates*, 8 A.3d 573, 605 (Del. Ch. 2010), *aff'd* 11 A.3d 749 (Del. 2010) (The elements of a tortious interference claim based on an existing contract are: "(1) a valid contract; (2) about which defendants knew; (3) an intentional act that is a significant factor in causing the breach of such contract; (4) without justification; (5) **which causes injury**.") (emphasis added); *Total Care Physicians, P.A. v. O'Hara*, 798 A.2d 1043, 1057 (Del. Super. 2001) (The elements of the tort of "unfair competition" are a "reasonable expectancy of entering a valid business relationship, with which the defendant wrongfully interferes, and thereby defeats plaintiff's legitimate expectancy and **causes him harm**.") (emphasis added); *Organovo Holdings, Inc. v. Dimitrov*, 162 A.3d 102, 122-23 (Del. Ch. 2017) (To state a claim for tortious interference with economic advantage, "a plaintiff must plead (a) the reasonable probability of a business opportunity, (b) the intentional interference by the defendant with that opportunity, (c) proximate causation, and (d) **damages** . . .") (emphasis added).

U.S. at 555); *see also Tredo v. Ocwen Loan Servicing, LLC,* Civ. A. 14-3013, 2014 WL 5092741, at *7 (D.N.J. Oct. 10, 2014) (Allegations of "damages in the form of fees, penalties, and negative reporting of their creditworthiness" are "vague allegations of harm" and "insufficient to establish a claim").

Crew's reliance on conclusory statements is likely explained by the fact that it was not, in fact, damaged. This is apparent on the face of Crew's Complaint: Crew alleges that its Government Contract was set to expire on July 31, 2020, Compl. ¶ 13, and that NYCEM terminated this contract **105 minutes** prior to expiration, *id.* at ¶ 40. Crew has not alleged plausible contract damages (and it is difficult to see how there could be) for a 105-minute-early termination alleged to flow from HotelEngine's alleged breach of contract.

Nor has Crew alleged any facts concerning the pre-termination period that would show it would be entitled to damages. For instance, under the Government Contract and the Subcontract, Crew was paid a fixed dollar amount for each night it booked a guest at a hotel (i.e., a per-night, per-reservation fixed fee). Ex. 3, Direct Contract pp. 121, 237; Ex. 1, Subcontract p. 3; Ex. 2, First Amendment p. 1. Under the Government Contract, "July 6, 2020 was the last day for any new reservations"—over three weeks before the Government Contract was terminated. Compl. ¶ 24. By the time Crew was terminated, all reservations based upon which Crew could have earned compensation had already been booked and the corresponding hotel stay completed. ***Critically, Crew does not allege that NYCEM has withheld or otherwise failed to pay Crew under the Government Contract for any reservations as a result of the termination.*** In sum, Crew's allegations are speculative at best and cannot support Crew's claims. The absence of more concrete allegations here is conspicuous and fatal to Crew's claims.

Additionally, and as explained below, Crew makes no allegations that the Contract would have otherwise continued past July 31, or that Crew otherwise had an expectation of continued business (i.e., additional contracts) with NYCEM or anyone else such that Crew could allege damages plausible under *Twombly* and *Iqbal*.   Crew's entire Complaint must accordingly be dismissed.

### B.     The Subcontract Limits a Damage Recovery by Crew.

Crew should not be allowed to amend its Complaint to allege specific damages because amendment appears to be futile.  The Subcontract contains a clear and express damages waiver barring, at minimum, the damages Crew might claim for its tort claims:

> 17. Limited Liability.  EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT, UNDER NO CIRCUMSTANCES, INCLUDING NEGLIGENCE, SHALL EITHER PARTY HEREUNDER BE LIABLE FOR ANY INDIRECT, INCIDENTAL, PUNITIVE, SPECIAL, OR CONSEQUENTIAL DAMAGES INCURRED OR SUFFERED BY THE OTHER PARTY ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT, INCLUDING WITHOUT LIMITATION LOST REVENUE, LOSS OF INCOME, OR LOSS OF BUSINESS ADVANTAGE, EVEN IF THE PARTY SUFFERING SUCH DAMAGES, OR AN AUTHORIZED REPRESENTATIVE OF SUCH PARTY, HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

Ex. 1, Subcontract p. 5.  At the very least, this Limited Liability clause effectively bars each of Crew's tort claims, because each such claim arises "in connection with" the Subcontract, and would seek damages barred by the clause.  *See generally, Coregis Ins. Co. v. Am. Health Found. Inc*., 241 F.3d 123, 128-29 (2d Cir. 2001) ("in connection with . . . [is] broader in scope than the term 'arising out of'" and is not necessarily tied to the concept of causal connection). Specifically:

- **Tortious Interference with Contract**: Crew seeks tort damages for NYCEM's termination of the Government Contract. Compl. ¶ 57. These damages would necessarily be "indirect," "incidental" and/or "consequential" from any direct damages under the Subcontract—because they would be "lost revenue" or "loss of income" from the Government Contract.

- **Unfair Competition**: Here too, Crew seeks tort damages for NYCEM's termination of the Government Contract. *Id.* at ¶ 67. These damages are not recoverable for the same reasons listed above.

- **Tortious Interference with Economic Advantage**: Crew seeks damages to its "economic advantage with NYCEM," but damages based on "loss of business advantage" are expressly waived by the Limited Liability clause. *Id.* at ¶ 72; Ex. 1, Subcontract p. 5.

Such waiver of damages is enforceable under Delaware law. *See Smyrna Hosp., LLC v. Petrucon Constr., Inc.*, CV N10C-01-061 CLS, 2013 WL 6039287, at *4 (Del. Super. Ct. Sept. 27, 2013); *see also Commonwealth Const. Co. v. Cornerstone Fellowship Baptist Church, Inc.*, C.A. 04L-10-101 RRC 2006 WL 2567916, at *23 (Del. Super. Ct. Aug. 31, 2006), amended 2006 WL 2901819 (Del. Super. Ct. Oct. 3, 2006) ("both parties signed the Agreement that clearly provides for a mutual waiver of consequential damages . . . Both parties must be held to the plain language of the document."); *Tandy Corp. v. Fusco Properties, L.P.,* CIV.A.95C-03-085JOH, 1996 WL 280774, at *4 (Del. Super. Ct. Apr. 10, 1996). Accordingly, Crew's tort claims fail to state a claim under which relief may be granted because Crew has waived the damages it would seek pursuant to those claims. Crew's tort claims should therefore be dismissed with prejudice.[4]

## III.    Even if Not Waived, Crew's Tort Causes of Action Fail as a Matter of Law

### A.    Crew's Tort Claims Fail as a Matter of Law because they are not Independent from Crew's Breach of Contract Claim.

"As a general rule under Delaware law, where an action is based entirely on a breach of the terms of a contract between the parties, and not on a violation of an independent duty imposed

---

[4]    Because Crew alleges no facts that support its claim that it has been directly damaged by HotelEngine's purported breach(es) of the Subcontract, this Limited Liability clause should also be read to bar Crew's breach of contract recovery to the extent such recovery is based on "INDIRECT, INCIDENTAL, PUNITIVE, SPECIAL, OR CONSEQUENTIAL" damages, including without limitation "LOST REVENUE, LOSS OF INCOME, OR LOSS OF BUSINESS ADVANTAGE." *See* Ex. 1, Subcontract p. 5.

by law, a plaintiff must sue in contract and not in tort." *Pinkert v. John J. Olivieri, P.A.*, CIV. A. 99-380-SLR, 2001 WL 641737, at *5 (D. Del. May 24, 2001) (citing *Garber v. Whittaker*, 174 A. 34, 36 (Del. Super. 1934). "Delaware courts will not permit a plaintiff to 'bootstrap' a breach of contract claim into a tort claim merely by intoning the prima facie elements of the tort while telling the story of the defendant's failure to perform under the contract." *Cornell Glasgow, LLC v. La Grange Properties, LLC*, CIV.A. N11C-05013JRS, 2012 WL 2106945, at *8 (Del. Super. Ct. June 6, 2012) (citing *Kuroda v. SPJS Holdings LLC*, 971 A.2d 872, 889 (Del.Ch.2009)); *Data Mgt. Internationale, Inc. v. Saraga*, CIV.A. 05C-050108, 2007 WL 2142848, at *3 (Del. Super Ct. July 25, 2005); *Iotex Comm., Inc. v. Defries*, No. 15817, 1998 WL 914265, at *5 (Del.Ch. Dec.21, 1998); *Pinkert*, 2001 WL 641737, at *5). "To be viable, the tort claim must 'involve violation of a duty which arises 'by operation of law and not by the mere agreement of the parties.'" *Cornell Glasgow*, 2012 WL 2106945, at *8. (citations omitted). "The question whether *vel non* a tort claim can survive along side [sic] a breach of contract claim arising from the same operative facts can, in many instances, be decided on a motion testing the viability of a plaintiff's complaint accepting all of the allegations therein as true." *Id.* (citations omitted).

Crew seeks a recovery in tort for the same alleged violations and damages it seeks under its breach of contract causes of action. Comparing the facts alleged in Crew's contract and tort causes of action, it is clear that Crew is boot-strapping its breach of contract claims into torts:

| Breach of Contract | Tort |
| --- | --- |
| "directly contracting with NYCEM on August 6, 2020 in violation of Section 3(a)(iii)" Compl. ¶ 50. | **Unfair Competition:**<br>""Upon information and belief, HotelEngine utilized Program data to continue to provide services to NYCEM directly and outside of the Subcontract." Compl. ¶ 63.<br><br>"The Direct Contract between HotelEngine and NYCEM specifically acknowledged HotelEngine's 'unique |

| | |
|---|---|
| | knowledge' regarding the administration of the Program . . ." *Id.* at ¶ 64.<br><br>**Tortious Interference with Economic Advantage:**<br>"HotelEngine acted intentionally, using dishonest, unfair and improper means, to interfere with Crew's relationship with NYCEM, including . . . soliciting NYCEM to contract directly with HotelEngine." *Id.* at ¶ 71. |
| "taking actions to induce, assist, or solicit the termination of the Government Contract in violation of Section 3(a)(v)" *Id.* at ¶ 50. | **Tortious Interference with Contract:**<br>"HotelEngine has intentionally and without justification or right interfered with Crew's contractual relationship with NYCEM by wrongfully inducing NYCEM to terminate the Government Contract." *Id.* at ¶ 54.<br><br>**Unfair Competition:**<br>"Upon information and belief, HotelEngine improperly utilized this strictly limited, direct access to NYCEM to have secret conversations with NYCEM in furtherance of circumventing Crew and inducing, assisting, or otherwise soliciting NYCEM to terminate the Government Contract." *Id.* at ¶ 61.<br><br>**Tortious Interference with Economic Advantage:**<br>"HotelEngine acted intentionally, using dishonest, unfair and improper means, to interfere with Crew's relationship with NYCEM, including, upon information and belief, by making misrepresentations to NYCEM regarding Crew's actions in connection with the Program . . . HotelEngine's actions caused damage to Crew's relationship and economic advantage with NYCEM . . ." *Id.* at ¶ 71. |

In short, Crew has alleged no violation of any duty existing under the law independent from the alleged violations under the Subcontract. As detailed above, Crew's contract and tort claims completely overlap; Crew merely seeks tort damages for alleged breaches of contract. Crew's tort claims must therefore be dismissed. *See Cornell Glasgow,* 2012 WL 2106945, at *8-9; *see also Kuroda*, 971 A.2d at 890 ("Because the complaint fails to identify the inference with a

right to the money independent of rights granted under the contract, the conversion claim must be dismissed.").

**B.    As a Subcontractor on the Project, HotelEngine Cannot Tortiously Interfere with the Government Contract as a Matter of Law.**

Under Delaware law, the elements of a tortious interference claim based on an existing contract are: "(1) a valid contract; (2) about which defendants knew; (3) an intentional act that is a significant factor in causing the breach of such contract; (4) without justification; (5) which causes injury." *Beard Research, Inc. v. Kates*, 8 A.3d 573, 605 (Del. Ch. 2010), *aff'd* 11 A.3d 749 (Del. 2010).  However, a tortious interference cause of action is not available against a party's own agent or representative: under Delaware law, a party's representative cannot, "as a matter of law, tortiously interfere with a contract to which [the representee] is a party and to which [the representative] is not a stranger."  *Cornell Glasgow,* 2012 WL 2106945, at *9.  In other words, when a party is not a "stranger" to the contract at issue, it cannot therefore, "through its agents, representatives, or otherwise, interfere with [that] contract."  *Id; see also Williams Elec. Co. v. Honeywell, Inc.*, 772 F. Supp. 1225, 1236 (N.D. Fla. 1991) (because "no tortious interference action can be brought against one who is a party to the underlying contract or business relationship," a subcontractor cannot tortiously interfere with the relationship between the general contractor and its contractual counterparty).

*Cornell Glasgow* is instructive.  In *Cornell Glasgow*, the Chancery Court considered whether a representative for a company could tortiously interfere with that same company's contract.  *Cornell Glasgow*, 2012 WL 2106945, at *9.  There, Cornell and La Grange executed an agreement pursuant to which La Grange granted Cornell the right to build, market, and sell residences within La Grange's housing development.  *Id.* at *2.  According to Cornell, La Grange hired a former Cornell employee, Wasko-Smith, to "assist in its plan to terminate Cornell from the

14

[p]roject." *Id.* at *4. In light of this alleged scheme, Cornell claimed that Wasko-Smith tortiously interfered with the contractual relationship between La Grange and Cornell. *Id.* at *5. The court rejected this claim, holding that Wasko-Smith was a representative of La Grange, and as such, "could not, as a matter of law, tortiously interfere with a contract to which La Grange was a party and to which she was not a 'stranger.'" *Id.* at *9.[5]

Here, Crew alleges that HotelEngine interfered with the Government Contract. But, as Crew alleges, the Government Contract "contemplated that HotelEngine may serve as a subcontractor to Crew to assist with certain responsibilities of the Government Contract." Compl. ¶ 10. HotelEngine became such a subcontractor. *Id.* at ¶14. Crew concedes that "HotelEngine was specifically authorized to engage in communications with NYCEM without the presence or participation of Crew" to perform its work under the Subcontract. *Id.* at ¶59. Concurrently, Crew alleges a conspiracy between HotelEngine and NYCEM, culminating in the entry of the Direct Contract between the two entities. *Id.* ¶42.

Accepting these pleaded facts as true, HotelEngine is closer to the Government Contract than Wasko-Smith was to the La Grange contract. Based on Crew's own allegations, there is no plausible basis to find that HotelEngine is a stranger to the Government Contract. Because Crew cannot plausibly assert that HotelEngine was a stranger to the Government Contract, Crew's tortious interference with contract claim fails as a matter of law. *See Cornell Glasgow*, 2012 WL 2106945 at *8-9; *see also, generally, Tenneco Auto, Inc. v. El Paso Corp.*, No. CIV.A. 18810-NC, 2007 WL 92621, at *5-6 (Del. Ch. Jan. 8, 2007) ("Imposition of liability for tortious interference

---

[5] In addition to finding that Wasko-Smith was not a stranger to the contract, the court noted that La Grange failed to allege any factual allegations supporting that Wasko-Smith was acting outside the scope of her authority. *Cornell Glasgow*, 2012 WL 2106945 at *9.

with contractual relationship requires that the defendant 'be a stranger to both the contract and the business relationship giving rise to and underpinning the contract. . . .'" (citations omitted)).

### C.    Crew's Unfair Competition Claim Fails to Allege a Reasonable Expectancy of Entering a Valid Business Relationship.

To plead the tort of unfair competition, Crew must plead "a reasonable expectancy of entering a valid business relationship." *Total Care Physicians, P.A. v. O'Hara*, 798 A.2d 1043, 1057 (Del. Super. 2001). Specifically, Crew is required to allege a reasonable probability that a specific party would have entered into a business relationship with it but for HotelEngine's actions. *See Nespresso USA, Inc v. Ethical Coffee Co. SA*, No. CV 16-194-GMS, 2016 WL 11697058, at *1 n.1 (D. Del. Sept. 7, 2016). In so doing, Crew must "establish in the pleadings that a business relationship with a specific party was reasonably probable." *Id.*; *see also You Map, Inc., v. Snap Inc.*, No. CV 20-00162-CFC, 2021 WL 106498, at *8 (D. Del. Jan. 12, 2021) (finding that both the claim of unfair competition and the claim of tortious interference with business relations require "a wrongful interference with the plaintiff's expectancy in a business relationship that had a reasonable probability of being consummated."). Neither "mere hope or the innate optimism of the salesman" nor "a mere perception of a prospective business relationship" rise to the level of establishing a reasonable expectancy. *Agilent Techs., Inc. v. Kirkland*, No. CIV.A. 3512-VCS, 2009 WL 119865, at *7 (Del. Ch. Jan. 20, 2009).

Crew has not alleged any probability—let alone a reasonable one—that HotelEngine prevented it from entering into a business relationship. The only business relationship discussed in Crew's Complaint is Crew's relationship with NYCEM, which, by Crew's own admission, was set to expire on July 31, 2020. Compl. ¶ 13. Crew has not alleged any negotiations or other discussions with NYCEM regarding an extension of the Government Contract. Nor has it alleged any jeopardized negotiations with other parties. Crew accordingly fails to state a claim for unfair

competition upon which relief can be granted. *See Nespresso*, 2016 WL 11697058 at *1 fn.1 (because the counterclaimant "failed to allege any factual support for its contention that negotiations were advanced or that a business relationship was reasonably probable," dismissal under Fed. R. Civ. P. 12(b)(6) was appropriate).

### D. Crew's Tortious Interference with Economic Advantage Claim Fails to Allege an Expectation of Future Business.

Crew's claim for tortious interference with economic advantage is a misnomer: Delaware only recognizes a cause of action for tortious interference with ***prospective*** economic advantage. *See Organovo Holdings, Inc. v. Dimitrov*, 162 A.3d 102, 122-123 (Del. Ch. 2017). To plead such a claim, "a plaintiff must plead (a) the reasonable probability of a business opportunity, (b) the intentional interference by the defendant with that opportunity, (c) proximate causation, and (d) damages ...." *Id.* The Chancery Court in *Organovo* clearly spelled out the requisite allegations:

> [T]o plead a reasonable probability of a business opportunity, [a plaintiff] must identify a specific party who was prepared to entered into a business relationship but was dissuaded from doing so by the defendant and cannot rely on generalized allegations of harm. While the plaintiff does not need to identify a party by name, the plaintiff must do more than offer vague statements about unknown customers. A plaintiff cannot plead this element by alleging a nebulous, unascertainable class of business relationships.[6]

As before, allegations concerning the reasonable probability of a business opportunity are devoid from Crew's Complaint. While Crew has identified NYCEM as a specific party, Crew has not alleged a reasonable expectation of any future contract with NYCEM or extension of the Government Contract. Rather, Crew merely alleges damage to Crew's existing relationship and economic advantage with NYCEM. Compl. ¶¶ 69, 71 and 72. Absent a plausible allegation of future business with NYCEM, Crew's tortious interference with prospective economic advantage

[6] *Id.* at 122-23 (citations and quotations omitted).

claim does not state a plausible claim for relief.  It must therefore be dismissed.  *See Organovo*, 162 A.3d at 122-23.

## Conclusion

Crew's Complaint fails to state any claim upon which relief may be granted. None of Crew's claims are supported by facts that allege that Crew was actually damaged, and Crew otherwise waived the damages it appears to seek in its Complaint. Separately and independently, Crew's tort causes of action fail as a matter of law.  For the foregoing reasons, HotelEngine asks the Court to dismiss Crew's Complaint in its entirety with prejudice.

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

*/s/ Kenneth J. Nachbar*

OF COUNSEL:

Michael P. Lennon, Jr.
Andrew C. Elkhoury
Anna V. Durham
MAYER BROWN LLP
700 Louisiana Street, Suite 3400,
Houston, Texas 77002-2730

Kenneth J. Nachbar (#2067)
Daniel T. Menken (#6309)
1201 North Market Street
Wilmington, DE 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
Email: knachbar@mnat.com
Email: dmenken@mnat.com

*Counsel for Defendant*

January 25, 2021