IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CrewFacilities.com, LLC,

                Plaintiff;

v.

HotelEngine, Inc.,

                Defendant.

Civil Action No. 20-cv-1637-RGA

MEMORANDUM ORDER

Before me is a motion to dismiss all claims in the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that the Plaintiffs have failed to state sufficient facts to support the plausibility of those claims. (D.I. 9). The matter has been fully briefed. (D.I. 10, 13, 15). For the reasons set forth below, the motion to dismiss is GRANTED-IN-PART and DENIED-IN-PART.

I. **BACKGROUND**

Plaintiff CrewFacilities.com ("Crew") asserts breach of contract, tortious interference with contract, unfair competition, tortious interference with prospective economic advantage, and contractual indemnification against Defendant HotelEngine. (D.I. 1). Defendant moves to dismiss all claims against it on the basis that Plaintiff failed to plead sufficient facts related to damages, that Plaintiff by contract waived any tort damages it is seeking, that the tort claims are impermissibly duplicative of the breach of contract claim, that Defendant could not have interfered with the contract since it was not a stranger to the contract, and that Plaintiff has not alleged an expectation of future business with which Defendant could have unfairly competed or tortiously interfered. (D.I. 9).

Plaintiff is a logistics and travel management company. (D.I. 1 at 2). Plaintiff entered into a Services Agreement (the "Government Contract") with the City of New York's Emergency Management Department ("NYCEM") to book and manage hotels and other temporary housing for individuals impacted by COVID-19 effective on April 2, 2020 with retroactive effect beginning March 21, 2020. (*Id.* at 2–3). The term of the Government Contract ran until July 31, 2020. On April 1, 2020, Plaintiff and Defendant entered into a Confidential Services Agreement in which HotelEngine would assist Crew with completing certain tasks required by the Government Contract. (*Id.* at 3). On May 2, 2020, Plaintiff and Defendant entered into the First Amendment to Confidential Services Agreement (the "Subcontract"). (*Id.*).

## II. RULE 12(b)(6) LEGAL STANDARD

Rule 8 requires a complainant to provide "a short and plain statement of the claim showing that the pleader is entitled to relief...." FED. R. CIV. P. 8(a)(2). Rule 12(b)(6) allows the accused party to bring a motion to dismiss the claim for failing to meet this standard. A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

"Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). I am "not required to credit bald assertions or legal conclusions improperly alleged in the complaint." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d

Cir. 2002). A complaint may not be dismissed, however, "for imperfect statement of the legal theory supporting the claim asserted." *See Johnson v. City of Shelby,* 574 U.S. 10, 11 (2014).

A complainant must plead facts sufficient to show that a claim has "substantive plausibility." *Id.* at 12. That plausibility must be found on the face of the complaint. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the [complainant] pleads factual content that allows the court to draw the reasonable inference that the [accused] is liable for the misconduct alleged." *Id.* Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## III. DISCUSSION

The parties have not expressly stated a choice of law for the issues in this case but have assumed that they are governed by Delaware law. The Subcontract, attached as an exhibit to HotelEngine's opening brief, includes a choice-of-law clause indicating Delaware law shall be applied in this case. (D.I. 10-1, Ex. 1 at 7 of 285). "Delaware courts will generally honor a contractually-designated choice of law provision so long as the jurisdiction selected bears some material relationship to the transaction." *J.S. Alberici Constr. Co. v. Mid-West Conveyor Co.,* 750 A.2d 518, 520 (Del. 2000). HotelEngine is incorporated in Delaware, which "provides an adequate substantial relationship with the state of Delaware." *Coface Collections N. Am. Inc. v. Newton,* 430 F. App'x 162, 167 (3d Cir. 2011); (D.I. 1 at 1). I will therefore apply Delaware law.

Crew alleges the following in its complaint. "In or about late June or early July," HotelEngine alerted NYCEM and Crew that there may have been billing mistakes that resulted in overpayments to vendors. (D.I. 1 at 4). Crew received payment from NYCEM on July 1 for services rendered in the second week of June; it then withheld payment to HotelEngine until

3

HotelEngine completed its reconciliation for the period of April 10 to June 15. (*Id.*). HotelEngine submitted its reconciliation on July 11. (*Id.*). The reconciliation confirmed the existence of overbilling. (*Id.*). HotelEngine agreed that Crew could withhold the vendor portion of the payment but asked for the fee portion of the payment, which Crew did remit to HotelEngine. (*Id.* at 5). During this same period, in violation of Section 3 of the Subcontract, HotelEngine and NYCEM agreed in secret meetings to cut out Crew as middleman and to contract directly with each other. (*Id.*). On July 16, as a result of the meetings, HotelEngine demanded the rest of the payment. (*Id.*). On July 17, HotelEngine sent a letter stating that it would not be able to perform its duties under the contract without the withheld payment. (*Id.*). On July 20, after Crew had offered to take on HotelEngine's outstanding tasks, NYCEM issued a Notice to Cure & Opportunity to Be Heard and asserted that Crew was in breach of the Government Contract for withholding payment to HotelEngine. (*Id.* at 6). Despite Crew's efforts to timely deliver data relating to tracking and booking after HotelEngine stopped its work, NYCEM issued a Notice of Termination "for cause" regarding the Government Contract on July 31, less than two hours prior to the expiration of the contract. (*Id.* at 7). On August 6, NYCEM and HotelEngine entered into an Emergency Buy-Against Contract (the "Direct Contract"). (*Id.*). Under the Direct Contract, HotelEngine agreed to complete the auditing and reconciliation duties that remained under Crew's Government Contract. (*Id.*).

### A. DAMAGES

HotelEngine asserts that that Crew has failed to allege any facts that show how it was damaged by HotelEngine. (D.I. 10 at 8). HotelEngine alleges that Crew's damages claims are conclusory and Crew has thus failed to state any plausible claims of entitlement to relief. (*Id.*). HotelEngine alleges further that any possible contract damages resulting from the termination of

4

the Government Contract are minimal since termination occurred 105 minutes before the contract's "natural expiration." (*Id.* at 9). HotelEngine states that Crew has not alleged that it was not paid under the contract and therefore there are no plausible damages based on the facts in the Complaint. (*Id.*).

Crew maintains that damages in breach of contract and tortious interference claims only need to be plead generally. (D.I. 13 at 5). According to Crew, the plaintiff is only required to allege facts that could give rise to damages, and that particularities like the exact monetary amount of damages are not necessary. (*Id.*). Crew states that it has sufficiently plead damages because it alleged that the Subcontract existed with HotelEngine, HotelEngine breached the Subcontract and committed tortious acts, NYCEM terminated the Government Contract "for cause," and Crew was damaged as a result. (*Id.* at 6). Crew states further that it specifically plead damages "including any fees under the Government Contract which Crew is unable to recover." (*Id.; see* D.I. 1 at ¶ 75). Crew argues that, in the present procedural posture, this Court must draw inferences in favor of Crew and infer that HotelEngine's actions are what caused NYCEM to terminate the Government Contract. (D.I. 13 at 6). Crew stated in its responsive brief that NYCEM has not paid Crew approximately $4,000,000 that it was owed under the Government Contract after NYCEM terminated the Government Contract "for cause." (*Id.* at 7).[1]

Crew has met the pleading standard for a plausible claim of entitlement to relief. Crew is not required to plead a specific dollar amount of damages. Crew "must do more than state, in conclusory fashion, that [it has] been damaged." *Am. Inst. for Chartered Prop. Casualty Underwriters v. Potter,* 2021 WL 431475, at *7 (D. Del. Feb. 8, 2021). Crew has alleged the existence of the Subcontract and its breach, as well as the existence of the Government Contract

---

[1] Crew cannot amend its pleadings in a brief.

5

and its termination "for cause." (D.I. 1 at 7–8). It is perhaps a close question, but I conclude that the Complaint contains sufficient factual allegations for me to infer that Crew suffered damages as a result of the breach of the Subcontract and the termination of the Government Contract. Therefore, Crew has met the pleading requirements for damages in each of the claims in the Complaint.

## B. WAIVER OF POTENTIAL DAMAGES

HotelEngine asserts that the Complaint should be dismissed with prejudice because Crew waived its ability to claim damages that it might claim for, "at minimum," the tort claims. (D.I. 10 at 10). HotelEngine states that the Subcontract, signed by both parties, contains a Limited Liability clause that expressly prohibits recovery for indirect damages "in connection with" the Subcontract and prohibits damages related to "loss of business advantage." (*Id.* at 10–11; *see* D.I. 10-1, Ex. 1 at 6 of 285). HotelEngine alleges that this bars Crew from recovering any damages that would come from Crew's claims of tortious interference with contract, unfair competition, and tortious interference with economic advantage. (D.I. 10 at 11).

Crew asserts that because only indirect damages are precluded by the Limited Liability clause, denying Crew the ability to recover would first require the Court to categorize the damages as indirect or direct. (D.I. 13 at 8). Crew further alleges that the damages it is claiming are direct and it would be erroneous to rule on this factual determination in the pleading stage. (*Id.*). Crew also argues that its fifth claim, contractual indemnification, is not affected by the Limited Liability clause because that clause has a preface that indicates it does not apply to other clauses in the Subcontract. (*Id.* at 9).

Limited lability clauses and other clauses limiting damages are generally enforceable under Delaware law. *eCommerce Industries, Inc. v. MWA Intelligence, Inc.*, 2013 WL 5621678,

6

at *45 (Del. Ch. Sept. 30, 2013); *see Smyrna Hosp., LLC v. Petrucon Constr., Inc.*, 2013 WL 6039287, at *4 (Del. Super. Ct. Sept. 27, 2013) (holding a similar waiver of damages was enforceable according to its ordinary meaning). Determination of the categorization of damages is not an issue that this Court will decide during a motion to dismiss. *In re Winstar Commc'ns, Inc.*, 2003 WL 21356090, at *4 (D. Del. Bankr. May 29, 2003) ("Plaintiff should be permitted to present proof of damages at trial, and the court can then apply the proper classification."). Crew has alleged direct damages. Any proper claims for direct damages in the complaint will not be dismissed based on the Limited Liability clause in the Subcontract. (D.I. 1 at 9–11). In addition, because of the preface to the Limited Liability clause, it appears that the fifth claim for contractual indemnification is not at issue in connection with this argument.

### C. INDEPENDENCE OF TORT CLAIMS

HotelEngine asserts that the tort claims are impermissibly duplicative of the breach of contract claim. (D.I. 10 at 11–12). HotelEngine asserts that Delaware law prohibits Crew from "seeking recovery in tort for the same alleged violations and damages it seeks under its breach of contract causes of action." (*Id.* at 12). HotelEngine asserts that because the facts in the three tort claims completely overlap with the facts in the breach of contract claim, the tort claims arise from contractual duty and are not violations of independent duties imposed by law. (*Id.* at 12–13).

Crew responds, "HotelEngine's duty not to intentionally or wrongfully interfere with the Government Contract and Crew's business expectancy exists independently of the Subcontract." (D.I. 13 at 10). Crew asserts that although the decision regarding the breach of contract claim could determine the outcome of the tort claims, that does not mean that the Subcontract is the only source of HotelEngine's duty. (*Id.*). Crew maintains that the duties of the tort claims are

7

imposed by law and the inclusion of those duties in the Subcontract was the result of prudent contract drafting. (*Id.*). Crew states that the tort claims should not be dismissed because Rule 8(d)(2) of the Federal Rules of Civil Procedure "allow[s] for alternative and inconsistent claims to be made in a complaint." (*Id.*). Crew asserts that because the tort claims could prevail even if the breach of contract claims do not, the tort claims act as an alternative avenue for relief should this Court rule against the breach of contract claim. (*Id.* at 10–11).

Crew's claims for tortious interference with contract and tortious interference with prospective economic advantage arise from both contractual obligations and common law duties. The proper question to determine whether tort claims are duplicative of breach of contract claims is whether the claims are "based entirely on a duty deriving from the contract, or is there a potential violation of a duty imposed by law separate and apart from the contractual obligations." *GWO Litig. Tr. v. Sprint Sols., Inc.*, 2018 WL 5309477, at *11 (Del. Super. Ct. Oct. 25, 2018). Therefore, it is theoretically permissible for Crew to bring tort claims and the breach of contract claim.

Regardless of any obligation imposed by the Subcontract, HotelEngine has the common law duty not to use wrongful means to induce NYCEM to terminate the Government Contract and not to use wrongful means to dissuade a party from entering a business relationship. *See Data Mgmt. Internationale, Inc. v. Saraga*, 2007 WL 2142848, at *4 (Del. Super. Ct. July 25, 2007) (finding that a conversion claim "arises from general common law tort principles and exists independent of any contractual relationship between the parties"). Crew has properly alleged that HotelEngine intentionally misrepresented "to NYCEM that Crew was unilaterally withholding the Vendor portion of Program funds" and that Crew's withholding of the funds impeded HotelEngine's ability to perform and jeopardized the housing program in general. (D.I.

1 at 11). Taking those facts as true, which I must on a motion to dismiss, HotelEngine's misrepresentations would amount to wrongful means. *See* RESTATEMENT (SECOND) OF TORTS § 767 CMT. C (AM. L. INST. 1979). Therefore, the claims of tortious interference with contract and tortious interference with prospective economic advantage arise from common law duties and Crew may bring separate tort claims.

However, the claim for unfair competition does not arise from a separate common law duty. A proper claim for unfair competition requires "a reasonable expectancy of entering a valid business relationship, with which the defendant wrongfully interferes, and thereby defeats the plaintiff's legitimate expectancy and causes him harm." *Agilent Technologies, Inc. v. Kirkland*, 2009 WL 119865, at *5 (Del. Ch. Jan. 20, 2009). For a claim of unfair competition, the interference "is only actionable if it is wrongful," and claims of unfair competition "must necessarily be balanced against a party's legitimate right to compete." *Id.* at *8. Crew's basis for the claims of unfair competition comes from the duty of HotelEngine not to meet exclusively with NYCEM and not to use knowledge acquired from its relationship with Crew in those meetings. This is duty is imposed solely by the Subcontract and those actions are not wrongful based on the common law alone. *See* RESTATEMENT (SECOND) OF TORTS § 767 CMT. C (AM. L. INST. 1979). Without the Subcontract, HotelEngine's direct discussions with NYCEM and discussion of knowledge about the program would not breach any duty. Crew has not alleged that either the "unique knowledge" that HotelEngine and NYCEM discussed or the Program data that HotelEngine had access to were trade secrets or even proprietary. (D.I. 1 at 10). Crew's tort claim for unfair competition is therefore dismissed on this basis.

### D. TORTIOUS INTERFERENCE WITH CONTRACT

HotelEngine asserts that it cannot have tortiously interfered with the Government Contract under Delaware law because the Government Contract "contemplated that HotelEngine may serve as a subcontractor to Crew," and therefore, HotelEngine was not a "stranger" to the contract. (D.I. 10 at 14). HotelEngine's reasoning relies on analogy to *Cornell Glasgow*. (*Id.* (citing *Cornell Glasgow, LLC v. La Grange Props., LLC*, 2012 WL 2106945 (Del. Super. Ct. June 6, 2012)). HotelEngine asserts that it is closer to the Government Contract than was the case in *Cornell Glasgow* because HotelEngine is explicitly named in the contract. (D.I. 10 at 15).

Crew asserts that HotelEngine and Crew are independent contractors and therefore the reasoning in *Cornell Glasgow* does not apply. (D.I. 13 at 11). Crew argues that "subcontractors are 'strangers' to a primary contract, just as the party contracting with the general contractor is a 'stranger' to the subcontract." (*Id.* at 12).

Although it is true that a party to a contract cannot, as a matter of law, tortiously interfere with that contract, the "stranger" rule that HotelEngine relies on in its opening brief has been rejected by Delaware courts subsequent to *Cornell Glasgow*. *See Bandera Master Fund LP v. Boardwalk Pipeline Partners*, 2019 WL 4927053, at *27–28 (Del. Ch. Oct. 7, 2019). Rather, when assessing a claim of tortious interference with contract, Delaware "uses the concept of justification to determine whether interference is improper and accounts for related-party status when assessing justification." *Id.* at *28. The idea that the defendant must be a stranger to the contract is merely another way of articulating the reasoning that "a party to a contract cannot be liable both for breach of [a] contract and for inducing that breach." *Id.* Here, Crew is not alleging that HotelEngine is breaching the Government Contract, but rather that HotelEngine breached the Subcontract and induced NYCEM to terminate the Government Contract. (D.I. 1 at 9).

10

HotelEngine cannot breach the Government Contract; therefore, Crew is not barred as a matter of law from bringing the claim of tortious interference of contract against HotelEngine regarding the Government Contract. HotelEngine's motion to dismiss this claim is denied.

### E. TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

HotelEngine asserts that it could not have tortiously interfered with Crew's prospective economic advantage or future business because Crew has failed to allege any facts that show Crew had a reasonable expectancy of a future business relationship with NYCEM. (D.I. 10 at 17). HotelEngine argues that Crew and NYCEM's past dealings are not sufficient evidence of a future business relationship. (*Id.*). HotelEngine states that, therefore, Crew's claim of tortious interference with prospective economic advantage fails to state a claim upon which relief may be granted. (*Id.* at 17–18).

Crew argues that it "is not required to identify a specific prospective business relationship" at the pleading stage to defeat a motion to dismiss. (D.I. 13 at 12). Crew maintains that it "had an existing business relationship with NYCEM in connection with serving the COVID-19 hotel Program," and that this fact is sufficient for a plausible claim of a business expectancy. (*Id.*). Crew alleges, solely in its responsive brief, "NYCEM and Crew were actively negotiating a renewal of the hotel Program during the time of the subject events," and that future "waves" of COVID-19 patients were expected to become an issue in New York City that would require Crew's services. (*Id.* at 12–13).

Crew's allegations in the complaint regarding a business expectancy are conclusory, and Crew has therefore failed to state a claim upon which relief may be granted. To properly plead a claim of tortious interference with prospective economic advantage, Crew must establish a

11

"plausible, bona fide expectancy" and not a mere perception of a business relationship. *Truinject Corp. v. Galderma, S.A.*, 2020 WL 5095448, at *6 (D. Del. Aug. 28, 2020).

Crew's reliance on *Enzo* does not help its argument. (D.I. 13 at 12 (citing *Enzo Life Scis., Inc. v. Digene Corp.*, 295 F.Supp.2d 424, 429 (D. Del. 2003))). Although *Enzo* does hold that the Complaint must be viewed in the light most favorable to the plaintiff, the plaintiff in Enzo did identify a business prospect by pointing to potential customers who were being dissuaded from buying the product. *Enzo*, 295 F.Supp.2d at 429. Here, Crew's Complaint is completely devoid of any alleged future business prospects. The Complaint only identifies Crew's existing relationship with NYCEM, not any future dealings or relationships. (D.I. 1 at 11). I cannot consider Crew's alleged negotiations concerning a renewal of the hotel program with NYCEM as this Court will only look to the Complaint to assess the viability of a claim. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). Therefore, the claim of tortious interference with prospective economic advantage is dismissed on this basis.

## IV. CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss all claims in Plaintiff's Complaint pursuant to Rule 12(b)(6) is GRANTED-IN-PART and DENIED-IN-PART. Plaintiff's third claim, unfair competition, and fourth claim, tortious interference with economic advantage, are DISMISSED WITHOUT PREJUDICE.

IT IS SO ORDERED.

Entered this 28th day of June, 2021.

United States District Judge